*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1200**

Gail D. Robinson,
Relator,

vs.

Analysts International Corporation,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed February 29, 2016**
**Affirmed**
**Larkin, Judge**

Department of Employment and Economic Development
File No. 33549055-4

Gail D. Robinson, Minneapolis, Minnesota (pro se relator)

Analysts International Corporation, St. Louis, Missouri (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Relator challenges an unemployment-law judge's (ULJ's) decision that she is ineligible for unemployment benefits. We affirm.

**FACTS**

Relator Gail D. Robinson began working for respondent Analysts International Corporation (AIC) as a healthcare analyst in December 2014. AIC assigned Robinson to work at the Mayo Clinic in Rochester. When Robinson agreed to the position, she believed that she possessed the necessary skills for the position. But the position was not what Robinson expected and was "not a good match" for her skills. After it became clear that Robinson was not an "ideal fit," AIC's senior program manager, Delmar Wyatt, sent Robinson an e-mail presenting two options: Robinson could either undergo "a rigorous training program" to develop the necessary skills or quit. AIC agreed to waive enforcement of its noncompete agreement and try to place Robinson on a new project if she quit. Robinson decided to quit and worked her last day in March 2015. AIC was unable to find a new position that matched Robinson's skills.

Robinson applied for unemployment benefits, and respondent Minnesota Department of Employment and Economic Development determined that she was ineligible to receive benefits. Robinson appealed the determination to a ULJ, arguing that the position with AIC was unsuitable, that she was not presented with an accurate description of the position before accepting it, and that she quit "for medical reasons [because] each workday was in excess of 15 hours including commute and work

combined." The ULJ conducted an evidentiary hearing and decided that Robinson was ineligible for unemployment benefits because she did not quit for a good reason caused by AIC and did not give notice that the position was unsuitable within 30 days of starting. Robinson requested reconsideration, and the ULJ affirmed his decision. This certiorari appeal follows.

## DECISION

On certiorari review of an eligibility determination, this court may reverse or modify the ULJ's decision

> if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are: (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious.

Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). "We review de novo a ULJ's determination that an applicant is ineligible for unemployment benefits. And we review findings of fact in the light most favorable to the ULJ's decision and will rely on findings that are substantially supported by the record." *Fay v. Dep't of Emp't & Econ. Dev.*, 860 N.W.2d 385, 387 (Minn. App. 2015) (quotation omitted).

Generally, an applicant who quit employment "is ineligible for all unemployment benefits." Minn. Stat. § 268.095, subd. 1 (2014). Robinson acknowledges that she quit her employment with AIC but contends that one or more exceptions to the general rule applies.

3

Robinson first argues that she quit for a good reason caused by AIC. An applicant who quit employment is nonetheless eligible for benefits if she "quit the employment because of a good reason caused by the employer." *Id.*, subd. 1(1). A good reason to quit caused by an employer "is a reason: (1) that is directly related to the employment and for which the employer is responsible; (2) that is adverse to the worker; and (3) that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." *Id.*, subd. 3(a) (2014).

Robinson offers several reasons for quitting. She states that she did not know the job expectations, she accepted the position "under a false pretense," and she would not have accepted the position if she had known the actual skills required. But the record does not contain evidence that AIC was responsible for Robinson's misunderstanding regarding the qualifications necessary for the position. Her misunderstanding therefore is not a good reason to quit caused by AIC.

Additionally, Robinson states that she quit because "[t]he long days and lack of sleep were beginning to wear heavily on my body and total wellbeing." She emphasizes the length of her commute to Rochester, which could take up to three-and-a-half hours each way. The Minnesota Supreme Court has held that, "[i]n the absence of contract or custom imposing an obligation of transportation upon the employer, transportation is usually considered the problem of the employee." *Hill v. Contract Beverages, Inc.*, 307 Minn. 356, 358, 240 N.W.2d 314, 316 (1976). Robinson does not suggest that AIC was responsible for her transportation. Therefore, the length of her commute is not a good reason to quit caused by AIC.

Robinson also argues that her lengthy commute could lead to serious illness. Serious illness is an exception to the rule disallowing benefits, but only if the serious illness "made it medically necessary that the applicant quit." Minn. Stat. § 268.095, subd. 1(7). Robinson asserts that she quit "to prevent what would have eventually become long term health issues" and argues that "[t]he extended workday/workweek, exacerbated by inclement weather (during the winter season), and the impact on an individual's health should not be ignored." However, the record does not contain evidence that Robinson's long commute actually caused a serious illness. *See Minchew v. Minn. Odd Fellows Home*, 429 N.W.2d 702, 703 (Minn. App. 1988) (holding that applicant has burden of proving that serious-illness exception applies). In the absence of such evidence, the serious-illness exception does not apply.

Lastly, Robinson argues that she quit because the employment was unsuitable. An applicant who quit is nonetheless eligible for unemployment benefits if she "quit the employment within 30 calendar days of beginning the employment because the employment was unsuitable." Minn. Stat. § 268.095, subd. 1(3). Robinson acknowledges that she did not quit within 30 days of beginning the employment. Indeed, Robinson quit in March 2015, three months after she started working for AIC. Robinson nonetheless argues that "[e]mployers' expectations are not always black and white within a 30-day time frame and can sometimes be subjective with personal prioritization when you are performing tasks for several individuals on the same team." But there are no exceptions to the 30-day timeframe. *See id.* Because of the length of Robinson's employment, the 30-day-trial exception is inapplicable.

In conclusion, we observe that Robinson's arguments sound in equity. But "[t]here is no equitable . . . denial or allowance of unemployment benefits." Minn. Stat. § 268.069, subd. 3 (2014). Because Robinson quit her employment and none of the statutory exceptions to the rule disallowing benefits when an applicant quit employment applies, the ULJ did not err by determining that she is ineligible to receive unemployment benefits.

**Affirmed.**